James Williams
1817 Cedar Ave.
Las Vegas, NV 89101

```
_____ FILED         _____ RECEIVED
_____ ENTERED       _____ SERVED ON
              COUNSEL/PARTIES OF RECORD

              JUL 11 2019

           CLERK US DISTRICT COURT
              DISTRICT OF NEVADA
     BY:_____ DEPUTY
```

UNITED STATES DISTRICT CORT

DISTRICT OF NEVADA

James Williams,

   Petitioner,

vs.

LAS VEGAS METROPOLITIAN POLICE DEPT, et al.,

   Respondents

) **NOTICE OF ON-GOING STATE AND FEDERAL CONSTITUTIONAL VIOLATIONS AND REQUEST FOR EXTRAORDINAY REMEDY (WRIT OF MANDAMUS/PROHIBITION)**

**2:19-cv-01212-APG-GWF**

  COMES NOW the Petitioner, James Williams, Pro Se, and hereby provides this court with notice of unconstitutional practices; and moves this court in the interest of justice and pursuant to 28 U.S.C. § 1651, to issue a Writ of Prohibition on LVMPD from enforcing CCC 6.04.130, 6.56.030 and any similar/related provisions of Chapter 16 of the Clark County Code against Petitioner/Plaintiff; and a Mandamus, mandating that LVMPD immediately and expeditiously return any and all money and/or property seized from Petitioner; and immediately provide Plaintiff with $500,000.00 U.S. Currency within 30 days, as a form of preliminary relief.

  DATED this 11th day of July 2019.

By: _____
    James Williams
    Petitioner, Pro Se

[Pleading title summary] - 1

## INTRODUCTION

This is a Petition for extraordinary remedies in the form of Mandamus and Prohibition; and because Plaintiff/Petitioner is a Pro Se litigant, the court may liberally construe the foregoing document as a "**Motion for Temporary Restraining Order and Preliminary Injunction**." At all times herein and throughout this litigation, Plaintiff was/is a natural and has not knowingly and willingly forfeited any of his God-given Inalienable Rights.

## STATEMENT OF FACTS

**a.) Relating to Inalienable/Unalienable Rights Violations under Art. 1 Sec. 1 of the Nev. Const. and the IX Amendment of the U.S. Const.; and Violations of the Dormant Commerce Clause (Art 1 sec. 8 cl 3 of the U.S. Const.)**

1. Plaintiff has made his living "selling bottled water" on the Las Vegas Strip since May 2009.

2. No one has ever been harmed or injured from Plaintiff "selling bottled water" on the Las Vegas Strip; in fact, Plaintiff has saved countless lives through engaging in the ordinary, beneficial, economic/commercial of providing bottled water which was purchased from an international corporation and derived from sources, to thirsty tourist in the middle of a desert from outside the state and country at a competitive price.

3. Virtually all the bottled water that Plaintiff has ever sold on the Las Vegas Strip originated from sources outside the state of Nevada, was purchased locally from an international corporation that is customarily engaged in interstate and foreign commerce and while he was the possessor of a valid food handler safety card from the Southern Nevada Health District.

4. Despite the facts contained in paragraphs 1-3; Plaintiff has been cited, arrested and had his property taken away by officers who are employed by LVMPD and conducting the affairs of Clark County through the enforcement of CCC 6.04.130, 6.56.030 and/or similar provisions of the county code for selling water; even though officers don't witness Plaintiff actually make a sale or propose to make a sale.

5. Because of LVMPD's continued enforcement of CCC 6.04.130, 6.56.030 and similar/related provisions of the county code (i.e. Chapter 16), Plaintiff has been unable to develop his faculties in a manner that he sees fit; in that, he is unable to obtain the proper books, courses, education and trainings in the areas of Law, Business, Stocks, Real-Estate, Commodities, Language, Management, Sales, etc., etc. that are appropriate to maximize his potential as a human being.

6. Plaintiff hereby incorporates by reference paragraphs 1-5; and alleges: The conduct of LVMPD officers described therein violates Plaintiffs' freedom from want; that is, he is unable to acquire the spiritual, mental and physical possessions he desires as a direct result of their actions.

### b.) Relating to Commerce, Welfare and Contracts Clause Violations

7. Plaintiff hereby incorporates by reference paragraphs 1-6 and alleges that: Because of the actions taken by LVMPD Officers, Plaintiff is prohibited/prevented/discouraged from engaging in the ordinary, beneficial, harmless, economic/commercial avocation of providing bottled water which was purchased from an international corporation and derived from sources outside the state, to thirsty tourist from outside the state and country at a competitive price, and depositing the proceeds from said activity into bank accounts that have interstate branches and are open to out of state and international customers; thereby preventing Plaintiff from voluntarily paying an income tax for the collective good of the country; and impaired Plaintiff in meeting various contractual obligations, such as car notes, rent, and other contractual debts.

### c.) Relating to the Supremacy Clause through the Sherman, Clayton, Hobbs and RICO Acts

8. Plaintiff hereby incorporate by reference paragraphs 1-7 and alleges that the individual officers conduct amount to "extortion;" that is, LVMPD officers did wrongfully obtain control over Petitioner's Inalienable Right "to sell bottled water" on the Las Vegas Strip and transfer said ability to casinos and other corporations

along the Las Vegas Strip, accepting their salaries and positions as county employees, along with the prospect of advancing within the enterprise of Clark County as consideration for violating their oaths of office; and "robbery," that is, LVMPD officers have continually and routinely taken money derived from selling bottled water, coolers filled with bottled water, cases of bottled water and dollies used by Plaintiff to more efficiently transport bottled water, from within Plaintiff's presence/possession, without his consent and under color of official right.

9. Plaintiff alleges that the "extortion" and "robbery" referenced in paragraph 8 clearly affects interstate and foreign commerce; in that, Plaintiff, is a natural person who was/is customarily engaged in the buying of goods and services that originated outside the State of Nevada from international corporations that are customarily engaged in interstate and foreign commerce, marketing those goods and services to tourist from outside the state and country at a competitive price and depositing the proceeds of said activities into banks that have interstate branches and are open to out of state and international customers.

10. Additionally, because of the facts contained in paragraphs 1-9, Plaintiff is hindered in his ability to increase his assets and resources to buy more goods in interstate and foreign commerce to market to citizens from outside the state and country, the proceeds of which would be deposited into a bank account and used to buy more goods and services in interstate commerce to be marketed to citizens from outside the state and country; the "robberies" specifically deplete Plaintiff's resources/assets, as they require him to use his bank accounts and on hand cash to replace the property taken by LVMPD defendant officers; which would've been used to buy more goods and services in interstate and foreign commerce; which would've been marketed to citizens from outside the state and country; the proceeds of which would've been deposited into a bank account and used to buy more goods and services in interstate and foreign commerce.

11. Plaintiff alleges that the numerous instances of "robbery," extortion"

[Pleading title summary] - 4

and/or "both" have been committed against him on over 150 separate occasions; at the hands of LVMPD officers who were conducting the affairs of Clark County through the enforcement of CCC 6.04.130, 6.56.030 and/or similar provisions of the county code.

12. Because of the facts contained in paragraphs 8-11, Plaintiff was injured in his business of selling water; which is part of his Inalienable Right to acquire, possess and protect property and his unlimited power to contract.

13. Finally, Plaintiff-Petitioner alleges that the Defendant-Respondent who committed the acts described in paragraphs 1-12, did so in furtherance of a plan to aid and abet Casinos and other corporations on and around the Las Vegas Strip in monopolizing the exchange of money along the same; and that they accepted their salaries and positions as Clark County employees, along with the prospect of advancing within the enterprise of Clark County as consideration for violating their oaths of office.

### d.) Relating to Denial of Access to the Courts and Retaliation for Engaging in Court Access

14. The facts contained in paragraphs 1-13 along with the inadequate law libraries and legal assistance provided by LVMPD at CCDC and by NDOC at its' correctional facilities prevented Plaintiff from setting forth the valid claims for relief under Art. 1 sec. 1 of the Nev. Const.; the IX Amendment of the U.S. Constitution; Art 1 sec. 8 cl 3 of the U.S. Const.; and the Sherman, Clayton, Hobbs and RICO Acts.

15. It is more favored policy at LVMPD to issue class II citations for misdemeanor offenses; as opposed to doing full bookings. However, even if a full booking is done, people with minor offenses such as selling water get an O.R. Release from the jail and are generally released within 12 hours of being booked.

\\\                                                                                                    ///
\\\                                                                                                    ///

[Pleading title summary] - 5

16.     Despite the facts contained in paragraph 15, LVMPD has Plaintiff has been placed on a list to arrest and do a full booking with no O.R. Release anytime he comes in contact with LVMPD Officers; which means that instead of Plaintiff being released on his Own Recognizances when he is arrested for selling water, he is held on a 48-hour delay. Which means instead of being in LVMPD custody from 6-14 hours for a water selling "violation" he is in custody for 60-72 hours.

17.     Upon information and belief, the policy to not give Petitioner-Plaintiff Class II Citations and O.R. Releases for selling water was partially motivated because he is an individual who is customarily engaged in interstate and foreign commerce; and partially motivated in retaliation of him filing and litigating case no. 2:14-cv-00414-APG-PAL and in furtherance of a plan to prevent him from bringing many of the claims he now brings in this case.

### LEGAL REASONING/AUTHORITY

A.  **THE COUNTY LACKS PERSONAL JURISDICTION TO CHARGE PETITIONER FOR AN ALLEGED VIOLATION OF CHAPTER 6 OR CHAPTER 16 OF THE COUNTY CODES**

a. <u>The Federal Constitution i.e. IX Amendment</u>

"We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain Unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness. -- That to secure these rights, Governments are instituted among men, deriving their just powers from the consent of the governed." Declaration of Independence. "The enumeration in the Constitution of certain rights shall <u>not</u> be construed to disparage or deny others retained by the people." U.S. Const. Amend. IX. "Purpose of Ninth Amendment is to guarantee to individuals those rights inherent to citizenship in democracy which are not specifically enumerated in Bill of Rights." <u>United States v. Cook</u>, 311 F. Supp 618; <u>Griswold v. Connecticut</u>, 381 U.S. 479,496(1965) see also <u>United States v. Choate</u>, 576 F.2d 165(9th Cir. 1978)( Rights under Ninth Amendment are only those so basic and fundamental and so deeply rooted in our society to be truly 'essential rights,' and which nevertheless, cannot find direct support elsewhere in the Constitution.)

Therefore, at the very least, the Ninth Amendment protects the Unalienable Rights Mentioned in the Declaration of Independence; and as shown below, the enforcement of Chapters 6 and 16 of the County Code violates those rights.

"The term [liberty] is deemed to embrace the right of the citizen to be free in The enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out of a successful conclusion of the purposes mentioned above." Allgeyer v. Louisiana, 165 U.S. 578,589(1897). "There is a clear distinction between an individual [or natural person] and a corporation [or artificial person], and the latter, being a creature of the state has not the constitutional right[s] [as the former]… The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the state or to his neighbors… He owes no such duty to the state, since he receives nothing therefrom beyond the protection of his life and property. His rights are such as existed by the law of the land long antecedent to the organization of the state, and can only be taken away by due process of law, and in accordance with the Constitution… He owes nothing to the public so long as he does not trespass upon their rights." Hale v. Henkel, 201 U.S. 43(1906).

In the present case, the county has not and cannot produced an injured party resulting from Petitioner's activities; see Hale, supra, nor can it show that Petitioner's activities are in and of themselves injurious. See Marymont, infra. Therefore, the County cannot justify using chapter 6 or 16 of the County Code to interfere with the enjoyment and development of Petitioner's faculties; to live and work where he will; to pursue any livelihood or avocation, and exercise his unlimited power to contract.

Accordingly, the court must acknowledge this the county lacks personal

jurisdiction to enforce CCC 6.04.130, CCC 6.56.030 and or similar provisions of the county code (i.e. Chapter 16) against Petitioner-Plaintiff; as he has not consented to being governed by the Clark County Code; nor do his activities rise to the level that requires government intervention.

### b. The State Constitution i.e. Article I sec. 1 of the Nevada Constitution

"All men are by nature free and equal and possess certain inalienable rights, among which are those of enjoying and defending life and liberty; of acquiring, possessing and protecting property and pursuing and obtaining safety and happiness." Art. I sec 1 Nev. Const.

"The legislature may suppress any business or calling which is in and of itself injurious and cannot be so regulated that it will not be detrimental to the public welfare; [however]… the citizen may not be denied the right to follow ordinary vocations which are not injurious in themselves, or in any way detrimental when properly regulated… No good reason appears for upholding as a police regulation a statute which confers no benefit to the public or any portion of the community, and results only in injury by prohibiting citizens from following a beneficial vocation. The legislature may regulate when regulation will protect, but may not suppress when inhibition will injure the party pursuing the lawful vocation and proper regulation will prevent injury to others." Marymont v. Nevada State Banking Board, 33 Nev. 333 (1910). "Any attempt of the legislature to prohibit the pursuit of these harmless and useful vocations, or to restrict them further than necessary for the protection of the public or the prevention of injury to others, is an encroachment upon the liberty and just rights of the citizen… which in the face of the constitutional provisions for the protection of the citizen secured by the blood of our forefathers would deny to the people the right to pursue honest, beneficial, and ordinary callings, and result in their injury and distress. That incomparable judge of the human mind said: 'You take my life when you take the means whereby I live.'" Id. at 345.

In the present case, CCC 6.04.130 and similar provisions of the County Code

have been continually used to prevent, deter and prohibit Petitioner (a natural person) from selling bottled water to thirsty tourist from outside the state and country on the Las Vegas strip in furtherance of a plan to aid and abet casinos and other corporations in monopolizing the exchange of money along the Las Vegas strip; which is impermissible. See Marymont, Id. at 343. ("a corporation, which is merely a creature of law, can have no greater fundamental rights than the individual, for whom the constitutional guarantees are directly provided.") Furthermore, Petitioner's activities are beneficial to the community; as they stimulate the local, national and global economies by providing a life sustaining substance at a competitive price; and beneficial to himself, as it allows him to pursue a livelihood, obtain safety from want and acquire happiness.

Accordingly, unless the county can show how and why Petitioner's activities are in and of themselves injurious, and in fact so injurious that they cannot be so regulated that they will not be detrimental to the public welfare; the court must acknowledge that: to cite, detain and/or arrest Petitioner for selling acting under authority of CCC 6.04.030, 6.56.030 and/or similar provisions of the Clark County Code violates his Inalienable Rights under Art. I sec. 1 of the Nev. Const.

**B.    CHAPTER 6 AND 16 OF THE CLARK COUNTY CODES AMOUNTS TO REGULATION OF INTERSTATE AND FOREIGN COMMERCE; WHICH IS A POWER EXCLUSIVELY RESERVED FOR CONGRESS AND OUTSIDE OF THE COUNTY'S SUBJECT-MATTER JURISDICTION**

"The Congress shall have the power to… to regulate commerce with the foreign nations, and among the several states, and with the Indian [Native] Tribes;" Art. I sec. 8 Cl. 3 U.S. Const. "[The] Power of Congress to regulate interstate commerce is so far exclusive that no state, [let alone a county] has power to make any law or regulation which will affect free and unrestrained intercourse and trade between the states." Pittsburg & Southern Coal Co. v. Bates, 156 US 557(1895); as "state legislation or a final court order materially affecting interstate commerce is invalid, even where Congress has not acted." Morgan v. Com of Va., 66 S.Ct. 1050, 328 U.S. 373(1946); Whiteside v. Southern Bus Lines, 177 F.2d 949(1950).

[Pleading title summary] - 9

"Any activity that is economic or commercial in nature will substantially affect interstate commerce." United States v. Lopez, 514 U.S. 549(1995); Gonzales v. Raich, 545 U.S. 1(2005). "The acceptance of any less comprehensive description of 'commerce' than commercial intercourse in all it's branches, which is 'interstate' when it concerns more states than one, would deprive Congress of that full power necessary to the discharge of it's constitutional duty to 'govern commerce among the states'" U.S. v. South-Eastern Underwriters Ass'n, 64 S.Ct. 1162, 332 U.S. 533(1944). Additionally, "'commerce among the states' means commerce between individual citizens of different states." Nield v. District of Columbia, 110 F.2d 246(1940). Therefore, Petitioner's activities amount to interstate and foreign commerce; and as shown below, the county violates the Dormant Commerce Clause, along with Anti-Trust Law and antiracketeering statutes with its' continued enforcement of Chapter 6 and 16 of the Clark County Codes.

     a. **Petitioner's arrest and prosecution for allegedly Violating chapters 6 and 16 of the county code Violates Art. I sec. 8 cl. 3 of the U.S. Const. a.k.a. The Dormant Commerce Clause**

"Where a statute[or code] regulates even handedly to effectuate a legitimate public interest, and its' effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to its' putative local benefits. If a legitimate local purpose is found, the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether or not it could be promoted as well with a lesser impact on interstate activities. Occasionally, the [U.S. Supreme] Court has candidly undertaken a balancing approach in resolving these issues, but more frequently it has spoken in terms of 'direct' and 'indirect' effects and burdens." Pike v. Bruce Church, Inc., 397 U.S. 137,142(1970)(Internal Citations Omitted). However, "When state statute directly regulates or discriminates against interstate commerce or its' effect is to favor in-state economic interest over out of state interest it is generally struck down without further inquiry," Brown-

Forman Distillers Corp. v. New York Liquor Authority, 476 U.S. 573(1986). A state Statutes' facial discrimination may be a fatal defect under the commerce clause Regardless of states' purpose, "but at a minimum, such facial discrimination invokes the strictest scrutiny of any purported legitimate local purpose and of absence of any nondiscriminatory alternatives." Huges v. Oklahoma, 441 U.S. 322(1979). Furthermore, "not even 'internal regulation' will be allowed if it directly affects interstate commerce." Freeman v. Hewit, 329 U.S. 249(1946).

    CCC 6.04.130 provides that: "It is unlawful for any person to sell, peddle, or Offer to sell or solicit sale by offering or displaying any merchandise, goods, items, wares or services on any improved or unimproved portion of a public right-of-way, including private property upon which a limited ease of public access has been granted, in the unincorporated area of Clark County except that which is expressly permitted by this code or state statute. This prohibition restricts only sales actually occurring or proposed to occur on the aforementioned public right-of-way, and does not prohibit any person from distributing advertisements or other promotional materials designed to encourage commercial transactions at licensed business locations." Further, the stated purpose of CCC 6.04.130 is "to prevent business from being done on the public right-of-way." see Clark County Ordinance(CCO) 4042; which is not consistent with the traditional exercise of the police power. On its' face then, CCC 6.04.130 discriminates against classes of activities that are economic and/or Commercial in nature; and in its' effects, it prohibits and discourages natural Persons from purchasing goods from international corporations that were derived from Sources outside the state, marketing them to tourist from outside the state and Country at a competitive price and depositing the proceeds of such activities into Banks that have interstate branches and are open to out of state customers. Therefore, the county lacks subject-matter jurisdiction to enforce CCC 6.04.130 and related provisions of the County Code; as the same are violative of The Dormant Commerce Clause.

Accordingly, in order to honor its' oath of office and uphold Article I section 8 Clause 3 of the United States Constitution, this court must dismiss this erroneous case brought by the County of Clark against Petitioner. Furthermore, as shown below, CCC 6.04.130 and related provisions are preempted by antiracketeering statutes and Anti-trust law.

### b. Petitioner's arrest and prosecution is preempted under the Sherman, Clayton, Hobbs and RICO Acts

"No provision of the Constitution is designed to be without effect,… Anything That is in conflict is null and void of law… Clearly, for a secondary law to come in conflict with the supreme law was illogical, for certainly, the Supreme Law would prevail over all other laws and certainly our forefathers had I, it intended that the supreme law would be the basis of all law and for any law to come in conflict would be null and void of law, it would bear no power to enforce, it would bear no obligation to obey, it would purport to settle as if it had never existed… and no citizens are bound to obey it: it operates as a mere nullity or fiction of law." Marbury v. Madison 5 U.S. 137(1803). The California Supreme Court has extracted from U.S. Supreme Court Decisions that: "on assertion of the invalidity of a state statute as conflicting with a federal statute, the question is not whether the state statute is designed for a proper state purpose, but weather the state statute interferes with the federal statute." Grimes v. Hoschler, 525 P.2d 65(1974). "A form of implied preemption exists, if compliance with both federal and state law is impossible, or 'Where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." New Cingular Wireless Services, Inc. v. AT&T Corporation, 498 F.3d 976,988(9th Cir. 2007)(quoting: Quicken Loans Inc. v. Wood, 449 F.3d 944,949(9th Cir. 2006)). "Where state and federal laws conflict, federal laws are given preference over state laws." Altria Group v. Good, 129 S.Ct. 538(2008).

As shown above, CCC 6.04.130 operates as a mere fiction or nullity and/or fiction of law; as it violates the Dormant Commerce Clause. See Madison, supra. However, as shown below, even if CCC 6.04.130 wasn't violative of the Dormant Commerce

Clause, it is preempted by multiple federal statutes.

### Sherman and Clayton Acts

"The Sherman Act was designed as a comprehensive charter on economic liberty aimed at preserving free and unfettered competition as the rule of trade. It rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality and the greatest material progress, while at the same time providing an environment conducive to our democratic, political and social institutions. But even if that premise were open to question, the policy unequivocally laid down by the Act is competition." Northern Pac. Ry Co. v. United States, 356 U.S. 1,4, 78 S.Ct. 514,517 (1958). And unlike state conduct, municipal government action is not automatically exempt from antitrust liability. See. City of Lafayette v. Louisiana Power & Light Co. 435 U.S. 389, 411-12(1978); see also Mich Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534(6th Cir. 2002); Four T's v. Little Rock Mun. Airport Comm'n, 108 F.3d 909,913(8th Cir. 1997).

To successfully allege sufficient facts to state a claim under 15 U.S.C. sec. 1, three elements must be demonstrated: (1) the existence of a contract, combination or conspiracy among two or more entities that (2) unreasonably restrains (3) interstate/foreign trade or commerce. Section 2 of Sherman provides that: "Every person who shall monopolize, attempt to monopolize, or combine or conspire to monopolize any part of the trade or commerce among the several states, or with the foreign nations shall be deemed guilty of a felony." See 15 U.S.C. sec. 2. The Clayton Act authorizes injunctive and monetary damages for anyone injured in their business or property by way of violation of the anti-trust laws.

In the present case, the mere existence of CCC 6.04.130 and related provisions of the county code, along with the fact that Petitioner was arrested and is being prosecuted by the Clark County District Attorney's Office(CCDA) for allegedly violating CCC 6.04.130 and/or similar provisions of the county code, shows a contract,

combination and/or conspiracy among LVMPD, the CCDA and the County of Clark; and Petitioner's arguments above regarding The Dormant Commerce Clause establish an unreasonable restraint on interstate and foreign trade/commerce. Therefore, Petitioner has stated valid claims under the Sherman and Clayton Acts; and shown that CCC 6.04.130 is in conflict with the unequivocal policy of competition laid down by Sherman and Clayton and that it (CCC 6.04.130 and 6.56.030) is preempted by the same.

Accordingly, liberal construction of Petitioner's pleadings requires this court to hold that the county is acting outside of its' subject matter jurisdiction by enforcing and/or attempting to enforce CCC 6.04.130 and similar provisions of the county code against him.

### Hobbs and RICO Acts

"Jurisdiction of the Federal Government under the Hobbs Act, which punishes interference with interstate commerce by extortion, robbery or physical violence, rest only on that interference." Stirone v. United States, 361 U.S. 212(1960). Therefore, Robbery, extortion and/or physical violence will trigger the Hobbs Act even when they have only a de minimis effect on interstate and/or foreign commerce. As shown above, the enforcement of CCC 6.04.130 and related provisions of the county codes have a substantial effect on interstate and foreign commerce; and as shown below, respondents continually extort Petitioner of his Inalienable/Unalienable Rights under Art. I sec. 1 of the Nev. Const. and the IX Amendment of the U.S. Const. see Marymont, and Hale, infra.

"Indictment under Hobbs Act which charged violation of rights provided by 29 U.S.C. sec. 411 is proper, since concept of property under Act is not limited to Tangible property, but also any valuable right that can be considered a Source or element of wealth;" United States v. Debs, 949 F.2d 199(6th Cir. 1991); see also United States v. Zemek, 634 F.2d 1159(9th Cir. 1980)(right to solicit business free From threatened destruction and physical harm falls within protected property rights). Therefore, when officers employed by LVMPD obtain control over Petitioner's ability to engage in the ordinary, beneficial, economic/commercial avocation of providing bottled

water which was purchased from an international corporation and derived from sources outside the state, to thirsty tourist from outside the state and country at a competitive price and preventing him from depositing the proceeds from said avocation into his US Bank Account which has interstate branches and is open to out of state customers; and transfer said ability to casinos and other corporations on the Las Vegas Strip in furtherance of a plan to aid and abet said casinos and corporations in monopolizing the exchange of money along the same, accepting their salaries and positions as county employees along with the prospect of advancing within the enterprise of Clark County as consideration for violating their oaths of office and duty to uphold the law; "extortion" under the Hobbs Act has been committed.

Hobbs is a predicate offense under RICO and the court may take Judicial Notice Of Petitioner being arrested over 150 times for alleged violations of 6.04.130 and/or Similar provisions of the county code. Furthermore, each arrest may contain up to 4 predicate offenses, extortion, robbery and kidnapping; as RICO provides civil/criminal remedies for a wide range of state and federal criminal offenses or "racketeering activity," including: N.R.S 200.310; N.R.S. 200.380 and 18 U.S.C. sec. 1951. See 18 U.S.C. sec 1961(defining offenses). In order to state a Civil Rico claim under section 1964(c), a plaintiff must sufficiently allege: "(1) Conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) Causing injury to plaintiff's business or property." Ove v. Gwinn, 264 F.3d 817,825 (9th Cir. 2001). A "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity; see 18 U.S.C. 1961(5). In addition to the two predicate acts within a 10-year period, a Plaintiff/Petitioner must "show a closed ended pattern or a threat of continuity; in order to establish a pattern of racketeering activity." (Citations omitted).

In his latest amended complaint, Petitioner has shown that officers employed by

LVMPD while conducting the affairs of Clark County through the enforcement of CCC 6.04.130 and/or similar/related provisions of the county code committed at least 500 predicate acts against him within a 10-year period; which caused Petitioner to be injured in his ability to engage in the ordinary, beneficial, economic/commercial avocation of providing bottled water which was purchased from an international corporation and derived from sources outside the state to thirsty tourist from outside the state and country at a competitive price. These acts are clearly related; in that they have the same and/or similar purposes and/or results of stopping, preventing and discouraging Petitioner and other people who engage in similar activities from engaging in ordinary, beneficial, avocations. Furthermore, a threat of continuity is shown by the mere existence of CCC 6.04.130 and related provisions of the county code. Moreover, the court may take judicial notice of Petitioner's LVMPD scope and the fact that Petitioner has been cited and/or arrested over 150 times for allegedly violating CCC 6.04.130 and/or similar provisions of the county code; which amounts to over 500 predicate offenses (Robberies under N.R.S. 200.380; Kidnappings under N.R.S. 200.310 and Extortions and Robberies under the Hobbs Act, which establishes a closed ended pattern. Therefore, Petitioner has made a showing that CCC 6.04.130 and related provisions of the county code are in conflict with the Hobbs and RICO Acts.

Accordingly, this court must hold that the enforcement of 6.04.130 and similar provisions of the Clark County Code are outside of the county's subject-matter jurisdiction.

  C.  **OBSTRUCTION OF COURT ACCESS AND RETALIATION FOR ACCESSING THE COURT**

It is well established in this once great nation that citizens cannot be denied access to the Courts. See I, V and XIV Amendments of the U.S. Constitution. Court access claims have been sustained on the theory of impairment of legal claims and obstruction of legal claims. (citations omitted). Since court access claims are rooted in the I Amendment, Plaintiff need only show an "injury that would chill a person of ordinary firmness and that adverse government action were substantially motivated" by him Petitioning the Government for redress of grievances. (Citations Omitted).

In the present case, LVMPD by and through its' officers, agents and/or employees have hindered Plaintiff in the development of his faculties in legal knowledge and procedure, that is, arresting Plaintiff for "selling water" prevented him from purchasing legal education and training and failing to provide an adequate law library and legal assistance at CCDC; they prevent him from hiring competent legal assistance to assist him in prosecuting the claims he now brings in this case by continually arresting him for selling bottled water and taking his money and property; and they have increased their pattern of racketeering activity and anticompetitive conduct through "extortion," "robbery," "kidnapping" "false arrest/imprisonment," "assault" and "battery" directed at Plaintiff in retaliation for him filing and litigating case no. 2:14-cv-00414-APG-PAL

Therefore, because Plaintiff has suffered irreparable harm to this litigation, he is entitled to extraordinary and/or injunctive relief; as if not for defendants' actions, case no. 2:14-cv-00414-APG-PAL would've never been dismissed have already been to trial and/or reached a settlement on the claims contained in DKT 89-1 in case no. 2:14-cv-00414-APG-PAL; as Plaintiff would have hired competent legal help to assist him in prosecuting the said claims if not for defendants' continued and ongoing civil/criminal violations.

**CONCLUSION AND REQUEST FOR RELIEF**

Based on the forgoing, Plaintiff has made a showing of a clear disregard for the Constitutions and Laws of the United States of America and the State of Nevada on behalf of LVMPD and its officers, irreparable harm to his Inalienable Rights and the threat of on-going harm to his Inalienable Rights and Civil Rights. Therefore, Petitioner request this court to liberally construe the foregoing document and grant him any relief deemed just, proper and equitable; including but not limited to:

   a. A writ prohibiting LVMPD and any of its officers, agents and employees from enforcing CCC 6.04.130, 6.56.030 or any similar related provision of the county code that to arrest Plaintiff while he is "selling bottled water."

    b.      A writ prohibiting LVMPD from engaging in the promulgated practice of doing full bookings on Plaintiff and not granting him O.R. releases on minor "infractions/offenses"

    c.      A Temporary Restraining Order and Preliminary Injunction issued against LVMPD, its offers, agents and employees; prohibiting them from engaging in anticompetitive conduct pursuant to 15 U.S.C. § 15.

    d.      A Temporary Restraining Order and Preliminary Injunction issued against LVMPD, its offers, agents and employees; prohibiting them from engaging in racketeering activity pursuant to 18 U.S.C § 1964(a).

    e.      A Temporary Restraining Order and Preliminary Injunction issued against LVMPD, its offers, agents and employees; prohibiting them from violating Plaintiff's Inalienable Rights Under Article I sec. 1 of the Nev. Const. and the IX Amendment of the U.S. Constitution, his right to engage in the occupation of his choice under the 14th Amendment, the Dormant Commerce Clause (Art. 1 sec. 8 cl 3 of the U.S. Const.), interfering with the obligation of contracts and interfering with congresses ability to collect taxes pursuant to FRCP 65.

    f.      A writ mandating the immediate and expeditious return of any and all money and property seized from Plaintiff related to him "selling bottled water" on the Las Vegas Strip.

    g.      A writ mandating LVMPD to compensate Plaintiff in the amount of $500,000.00 as preliminary compensation; to prevent on going irreparable injury to this litigation and Plaintiff's Inalienable Rights.

    h.      Any and all other relief deemed just, proper and equitable.

**VERIFICATION**

I, James Williams hereby declare subject to the penalties of perjury under the laws of the United States of America and the State of Nevada that the foregoing: "**NOTICE OF ON-GOING STATE AND FEDERAL CONSTITUTIONAL VIOLATIONS AND REQUEST FOR EXTRAORDINAY REMEDY (WRIT OF MANDAMUS/PROHIBITION)**" is accurate, true and correct to the best of my knowledge information and belief.

*/s/ James Williams*

James Williams
The son of Mary
Plaintiff, Pro Se